UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALLIED WORLD SURPLUS LINES                CIVIL ACTION NO.
INSURANCE COMPANY,
                                          SECTION
                            Plaintiff
        v.                                JUDGE

CURAHEALTH NEW ORLEANS LLC,               MAGISTRATE
d/b/a CURAHEALTH HOSPITAL,

                            Defendant

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Allied World Surplus Lines Insurance Company seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that it owes no obligation for insurance coverage or defense expenses, or alternatively, only a limited obligation, under a claims-made professional liability policy and an umbrella and/or excess claims-made professional liability policy (the "Policies") issued to Curahealth Boston, LLC, for a medical-malpractice claim against Insured Entity Curahealth New Orleans, LLC, arising out of the death of patient Courtney McMahon (the "McMahon Survivors' claim").

### THE PARTIES

1.

Plaintiff Allied World Surplus Lines Insurance Company ("Allied World") is an Arkansas corporation with its principal place of business in New York.  Allied World is therefore a citizen of Arkansas and New York.

- 1 -

2.

Defendant Curahealth New Orleans, LLC d/b/a Curahealth Hospital ("Curahealth New Orleans") is a Delaware limited liability company with its principal place of business in Louisiana. Upon information and belief, Curahealth New Orleans is a subsidiary of Curahealth Boston LLC, d/b/a Curahealth, a Delaware limited liability company with its principal place of business in Texas. Upon information and belief, Curahealth Boston's members are not citizens of either Arkansas or New York.

## JURISDICTION AND VENUE

3.

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this dispute is between citizens of different states. As alleged above, because Allied World is a citizen of Arkansas and New York, and the members of Curahealth New Orleans are not citizens of either Arkansas or New York, complete diversity exists.

4.

The amount in controversy easily exceeds $75,000, exclusive of interests and costs. Curahealth New Orleans seeks coverage for the loss and defense expenses resulting from an underlying medical-malpractice action. The underlying action alleges a wrongful death and includes claims for damages for the decedent's lost chance of survival, as well as direct damages to the decedent's surviving children, including loss of love and affection; loss of services; loss of support; funeral expenses; and mental pain, suffering, and distress as a result of the death.

5.

This Court has personal jurisdiction over Curahealth New Orleans because its principal place of business is in New Orleans, and it owns and/or operates Curahealth Hospital in New Orleans, where the decedent in the underlying medical-malpractice action received treatment.

6.

This Court is a proper venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this dispute — that is, the medical treatment of the decedent in the underlying medical-malpractice action — occurred in this judicial district.

**FACTUAL BACKGROUND**

*The Underlying Incident*

7.

Defendant Curahealth New Orleans owns and/or operates Curahealth Hospital, located at 3601 Coliseum Street in New Orleans, Louisiana.

8.

Curahealth Hospital treated Courtney McMahon from October 19, 2017, through November 9, 2017.  According to the allegations of the petition in the underlying action,[1] in connection with McMahon's treatment, healthcare providers allegedly employed by or agents of Curahealth Hospital administered McMahon an intravenous antibiotic.

---

[1]     A copy of the state court petition in the underlying dispute is attached as Exhibit 1.

9.

On November 9, 2017, McMahon died at Curahealth Hospital due to alleged "inadvertent" intravenous administration of the antibiotic.  Exh. 1, Petition at 3 ¶¶ 7-8.

*The McMahon Survivors' Claims for Damages*

10.

On October 26, 2018, Kobey Lazor, McMahon's surviving adult child, and Shawn Kovac, in his capacity as legal custodian/guardian of Michael Lazor, McMahon's surviving minor child (collectively, the "McMahon Survivors"), filed a claim for damages before the Louisiana Medical Malpractice Review Board against Curahealth New Orleans and three doctors.

11.

By letter dated November 5, 2018, the Louisiana Patient's Compensation Fund advised the McMahon Survivors' lawyer that the Patient's Compensation Fund "has no record of Curahealth New Orleans, LLC [and] therefore they are considered not[ ]qualified" for the McMahon Survivors' claim to be covered by the provisions of Louisiana Revised Statute section 40:1231.8 *et seq.*

12.

According to the allegations of the petition in the underlying action, on November 27, 2018, the Louisiana Patient's Compensation Fund wrote directly to Curahealth New Orleans, advising that the Patient's Compensation Fund had no record of Curahealth New Orleans and that it considered Curahealth New Orleans not qualified for coverage by the Patient's Compensation Fund.  Exh. 1, Petition at 2 ¶ 6.

13.

On November 28, 2018, Curahealth New Orleans advised Allied World that it had not enrolled in the Patient's Compensation Fund until October 2018 — on a date after Allied World's Policies had expired.

14.

On January 22, 2019, the McMahon Survivors sued Curahealth New Orleans in Orleans Parish Civil District Court, alleging Curahealth New Orleans is liable for McMahon's death and their resulting damages.  *See generally*, Exh. 1, Petition.

*The Allied World Policies*

15.

Allied World issued a Healthcare Organizations Professional and General Liability Insurance Policy, No. 0310-3653, to Curahealth Boston, LLC d/b/a Curahealth for the Policy Period of October 1, 2017, to October 1, 2018 (the "Primary Policy").[2]

16.

The Primacy Policy provides coverage to Curahealth hospitals located across the country, including the hospital owned and/or operated by Curahealth New Orleans, which is listed as an "Insured Entity," and therefore an Insured, under the Primary Policy.  The scope of coverage, however, varies depending on the Primary Policy's terms.

---

[2]       A copy of the Primary Policy is attached as Exhibit 2.

17.

The Primary Policy covers, among other things, a claim alleging a "Medical Professional Incident," defined as "an actual or alleged negligent act, error or omission by the Insured in connection with: 1.  The Insured's rendering or failure to render Medical Professional Services. . . ." Exh. 2, Primary Policy at 47 § III ("Definitions") ¶ U.

18.

Regarding alleged incidents occurring in Louisiana, like the McMahon Survivors' claim here, the Primary Policy includes unique provisions that limit coverage for medical-malpractice claims in line with Louisiana's Medical Malpractice Act, which statutorily created a Patient's Compensation Fund to minimize the risk of medical-malpractice claims to $100,000 for qualified healthcare providers.  The Medical Malpractice Act materially minimizes risk by imposing a cap on certain damages and providing coverage for damage claims against qualified healthcare providers under the Patient's Compensation Fund.  *See generally* La. Stat. § 40:123.1, *et seq.*

19.

Specifically, the Primary Policy includes Endorsement No. 19, titled Louisiana Patient's Compensation Fund ("PCF Endorsement"), which is expressly applicable to Louisiana medical-malpractice claims. The PCF Endorsement assumes that the Insured will minimize its risk by enrolling in the Patient's Compensation Fund and protecting itself with the cap on damages and the $100,000 limit on liability for eligible medical-malpractice claims.  *See generally* Exh. 2, Primary Policy, at 40, End. No. 19.

20.

To further ensure that the Insured avails itself of the Patient Compensation Fund's protections to minimize risk and exposure on medical-malpractice claims, the Primary Policy requires the Insured to expressly warrant that it is both eligible for and a member of the Patient's Compensation Fund and that "it will maintain its membership status in the Fund throughout the Policy Period."  The PCF Endorsement provides:

> It is a condition precedent to this Endorsement becoming effective, that as of the effective date of this Endorsement, the **Insured** is eligible for, and is a dues-paying member of, The Fund. The **Insured** warrants and agrees that it will maintain its membership status in The Fund throughout the **Policy Period**.

*Id.* at 40, End. No. 19, ¶ 3.

21.

Consistent with the Insured's minimizing its risk by enrolling in the Patient's Compensation Fund, the PCF Endorsement limits coverage on claims for which the Patient's Compensation Fund is unavailable "for any reason" to the amount that would be owed on the claim if it were covered by the Patient's Compensation Fund.  According to the PCF Endorsement:

> 5.   If the **Insured** shall, at any time, fail to meet the requirements of eligibility or membership in The Fund, or The Fund is unavailable to the **Insured** to pay an otherwise eligible **Claim**, in whole or in part, *for any reason*, including but not limited to the insolvency or financial impairment of The Fund, then:
>
> (a)   The **Insurer** will not be liable under this Policy to any greater extent than it would have been had there been full coverage under The Fund for such **Claim**; and
>
> (b)   The **Insured** will be deemed self-insured for any amounts payable over the applicable Limits of Insurance.

*Id.* at 41, End. No. 19, ¶ 5 (italicized emphasis added).

22.

Allied World also issued a Healthcare Excess and Umbrella Liability Insurance Policy, No. 0310-3655, to Curahealth Boston LLC d/b/a Curahealth for the Policy Period of October 1, 2017 to October 1, 2018 (the "Excess Policy"), under which Curahealth New Orleans is also an Insured.[3]

23.

The Excess Policy includes the same Louisiana Patient's Compensation Fund Endorsement, Form MED 00197 17 (12/14), as the Primary Policy. *See* Exh. 3, Excess Policy at 2, Item 10 ("Endorsements Attached at Issuance"), subsection 9; *see also id.* at 17, End. No. 19.

24.

Additionally, the Excess Policy attaches only after the underlying Insured has paid the applicable underlying limit of liability.  Exh. 2, Excess Policy, at 46 § IV ("Conditions"), ¶ J(1) ("Payment of Loss").

*Curahealth New Orleans's Insurance Claim*

25.

By letter dated February 7, 2018, Curahealth Boston LLC, through its insurance agent Hays Company, and on behalf of its subsidiaries including Curahealth New Orleans, advised Allied World of a Notice of Circumstance under the Policies pertaining to the incident involving McMahon.

---

[3]     A copy of the Excess Policy is attached as Exhibit 3.

26.

In response, Allied World acknowledged receiving the Notice and noted no claim had been made yet.  Allied World advised that "[s]hould a Claim develop or a lawsuit be filed against you, we will analyze and advise on our coverage position at that time."

27.

Nine months later, on November 21, Allied World learned of the McMahon Survivors' claim before the Louisiana Medical Malpractice Review Board.  Shortly after, Allied World learned for the first time that — contrary to Curahealth New Orleans's warranty and agreement about its membership in the Louisiana Patient's Compensation Fund — the Patient's Compensation Fund had "no record of Curahealth New Orleans," and Curahealth New Orleans was not a qualified provider for which the Patient's Compensation Fund was available.

28.

Allied World then advised Curahealth New Orleans that it was investigating coverage and requested Curahealth New Orleans provide documents regarding its membership or attempts to join the Patient's Compensation Fund.  Allied World did not receive a response.

29.

On or about January 22, 2019, Allied World learned of the McMahon Survivors' state-court lawsuit against Curahealth New Orleans arising out of McMahon's death.

30.

On February 25, 2019, Allied World issued a coverage determination to Curahealth New Orleans.  In that letter, Allied World informed Curahealth New Orleans that coverage may not be available, or may be limited, under the Policies for the McMahon Survivors' claim because,

among other reasons, Curahealth New Orleans was not a member of the Patient's Compensation Fund at the time of the alleged Medical Professional Incident and therefore did not satisfy a material condition to coverage, which Curahealth New Orleans had warranted and expressly agreed to satisfy. Alternatively, the Policies expressly provide that where, as here, the Patient's Compensation Fund is unavailable to Curahealth New Orleans to pay a claim otherwise covered by the Patient's Compensation Fund, Allied World's liability is limited to what it otherwise would have been, which is $100,000.

31.

Allied World's coverage determination creates an actual or justiciable controversy between Allied World and Curahealth New Orleans.

32.

Accordingly, Allied World filed this action, pursuant to 28 U.S.C. §§ 2201 and 2202, seeking a declaratory judgment that, under the Policies, Allied World owes no coverage obligations, or alternatively, only limited coverage obligations, for the McMahon Survivors' claim against Curahealth New Orleans.

## COUNT 1

### (Declaratory Judgment – Breach of Warranty)

33.

The allegations of Paragraphs 1 – 32 are hereby incorporated by reference as if fully restated.

34.

Paragraph 3 of the PCF Endorsements attached to both the Primary Policy and the Excess Policy includes a statement declaring that "[t]he Insured warrants and agrees that it will maintain its membership status in the Fund throughout the Policy Period."

35.

The Insured's warranty and agreement is a material condition to issuing the Policies under Louisiana law.  Without Curahealth New Orleans's warranty and agreement, and the belief that Curahealth New Orleans was and would remain a member of the Louisiana Patient's Compensation Fund throughout the Policy Period, Allied World would not have issued the portion of the Policies covering Curahealth New Orleans' medical-malpractice claims as issued.

36.

Based on the information provided to date, Allied World understands that Curahealth New Orleans did not become a member of the Patient's Compensation Fund until after the Policy Period expired on October 1, 2018.  Curahealth New Orleans knew the representation that "it will maintain its membership status in the Fund throughout the Policy Period" was false and misleading because Curahealth New Orleans was not and never had been a member of the Patient's Compensation Fund when the statement was made upon the Policies' issuance on October 1, 2017.  Curahealth New Orleans also knew this misrepresentation materially increased the risk of loss because, among other things, without membership, the Patient's Compensation Fund is not available to pay medical-malpractice claims, and those claims are not subject to the Louisiana Medical Malpractice Act's cap on damages.

37.

Because Curahealth New Orleans did not "maintain its membership" in the Patient's Compensation Fund during the Policy Period; did not satisfy a material condition to coverage, which it warranted and expressly agreed to satisfy; and represented to Allied World that it was a member of the Patient's Compensation Fun, which was false, misleading, and materially increased risk, Allied World is entitled to a declaratory judgment ruling:

(a) Curahealth New Orleans breached the warranty and agreement in the PCF Endorsements attached to both the Primary Policy and the Excess Policy and which are based on material conditions to issuing the Policies; and

(b) Curahealth New Orleans's breach of the warranty and agreement voids the Policies pertaining to coverage for medical-malpractice claims against Curahealth New Orleans, and precludes the Policies from attaching to cover the McMahon Survivors' claim, resulting in no coverage under the Policies for this claim.

## COUNT 2

### (Declaratory Judgment – Enforcement of Paragraph 5 of PCF Endorsement)

38.

The allegations of Paragraphs 1 – 37 are hereby incorporated by reference as if fully restated.

39.

Alternatively, if this Court determines coverage exists under the Policies for the McMahon Survivors' claim against Curahealth New Orleans, the Court should declare that the

terms of Paragraph 5 of the PCF Endorsement limit Allied World's obligation for liability to $100,000.

40.

Paragraph 5 of the PCF Endorsement, attached to both the Primary Policy and the Excess Policy, states: "[i]f the Insured shall, at any time, fail to meet the requirements of eligibility or membership in the Fund, or the Fund is unavailable to the Insured to pay an otherwise eligible Claim, in whole or in part, for any reason . . . then: (a) The Insurer will not be liable under this Policy to any greater extent than it would have been had there been full coverage under the Fund for such Claim . . . ." Exh. 2, Primary Policy at 41, End. No. 19, ¶ 5; *see also* Exh. 3, Excess Policy at 17, End. No. 19, ¶ 5.

41.

Under Louisiana law, when the Patient's Compensation Fund covers a medical-malpractice claim, the maximum amount of liability a qualified healthcare provider or its insurer may owe is $100,000.  *See* La. Stat. § 40:1231.2(B)(2).  In other words, when the Patient's Compensation Fund is available to pay eligible claims, the only liability a qualified healthcare provider and its insurer have is $100,000.

42.

Based on the information provided to date, Allied World understands that Curahealth New Orleans did not become a member of the Patient Compensation's Fund until after the Policy Period expired, and the McMahon Survivors' claim against Curahealth New Orleans is not qualified for review before the Louisiana Medical Malpractice Review Board or payable under

the Patient's Compensation Fund.  Thus, the Patient's Compensation Fund is "unavailable" to Curahealth New Orleans to pay an otherwise eligible claim within the meaning of the Policies.

43.

Accordingly, under Paragraph 5 of the PCF Endorsement, Allied World's liability for the McMahon Survivors' claim under the Primary Policy is limited to $100,000, and Allied World has no obligation under the Excess Policy for the McMahon Survivors' claim against Curahealth New Orleans.

44.

Therefore, even if the Court determines coverage exists for the McMahon Survivors' claim against Curahealth New Orleans, Allied World is nonetheless entitled to a declaratory judgment ruling:

(a) under Paragraph 5 of the PCF Endorsement, attached to both the Primary Policy and the Excess Policy, the Louisiana Patient's Compensation Fund is unavailable to Curahealth New Orleans to pay an otherwise eligible claim; and

(b) Allied World's liability, under both the Primary Policy and the Excess Policy, for the McMahon Survivors' claim against Curahealth New Orleans is limited to $100,000, the amount Allied World's liability otherwise would have been if there were full coverage under the Patient's Compensation Fund for this claim.

**REQUESTS FOR RELIEF**

WHEREFORE, plaintiff Allied World Surplus Lines Insurance Company respectfully requests a judgment in its favor as follows:

A.    For **Count I**, a judgment declaring that, because defendant Curahealth New Orleans, LLC was not a member of the Louisiana Patient's Compensation Fund at the time of the underlying Medical Professional Incident, or during the Policy Period, and therefore did not satisfy a material condition to coverage, which it warranted and expressly agreed to satisfy, the Policies are void as to coverage for medical-malpractice claims against Curahealth New Orleans, and there is no coverage under the Primary Policy or Excess Policy for the McMahon Survivors' claim against Curahealth New Orleans.

B.    Alternatively, even if this Court determines coverage for the McMahon Survivors' claim exists under the Policies, for **Count II**, a judgment declaring that, under Paragraph 5 of the PCF Endorsement, Allied World's obligation for liability for the McMahon Survivors' claim is limited to $100,000, the amount its liability otherwise would have been if there were full coverage under the Patient Compensation's Fund because the Patient's Compensation Fund is unavailable to Curahealth New Orleans to pay an otherwise eligible claim; and

C.    For any other relief available at equity or law.

Respectfully submitted,

  */s/ Judy Y. Barrasso*
Judy Y. Barrasso, 02814, T.A.
Chloé M. Chetta, 37070
Lorcan L. Connick, 38168
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701

*Attorneys for Allied World Surplus Lines*
*Insurance Company*

1632517

- 15 -